**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FRANK CALABRESE, an individual, | ) | |
| | ) | Case No.: |
| Plaintiff, | ) | |
| v. | ) | Judge: |
| | ) | |
| COOK COUNTY BOARD OF REVIEW, a public | ) | Magistrate: |
| body; and SAMANTHA STEELE, in her individual | ) | |
| and official capacity; DAN BALANOFF, in his | ) | |
| individual and official capacity; | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

**VERIFIED COMPLAINT**

NOW COMES the Plaintiff, FRANK CALABRESE, by and through his attorneys, for his Verified Complaint against the Defendants, COOK COUNTY BOARD OF REVIEW, a public body; SAMANTHA STEELE, in her individual and official capacity; and DAN BALANOFF, in his individual and official capacity, and in support thereof states and alleges as follows:

**NATURE OF THE ACTION**

1.      This is a federal-question action involving claims under 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments of the U.S. Constitution, and Illinois statutory and common law (Illinois Whistleblowers Act). Calabrese was discharged from his employment with the Cook County Board of Review in retaliation for participating in an investigation of the individual Defendants conducted by the Cook County Office of the Independent Inspector General.

**PARTIES**

2.      Plaintiff, FRANK CALABRESE ("CALABRESE"), is an individual that resides in Cook County, Illinois, and has been an Illinois resident at all relevant times herein.

3.      Defendant, COOK COUNTY BOARD OF REVIEW ("BOR"), is a public body located in Cook County, Illinois, which at all relevant times herein was where Calabrese was employed.

1

4.      The BOR is an agency within Cook County that impartially reviews the assessments of all property within Cook County to the extent authorized by the Property Tax Code; corrects all assessments which should be corrected; and raises, lowers, or directs the Cook County Assessor to change, correct, alter, or modify assessments as justice may require. The BOR also uses the authority provided by the Property Tax Code to ensure a full, fair and impartial assessment of property.[1]

5.      Defendant, SAMANTHA STEELE ("Steele"), is an individual that resides in Cook County, Illinois and at all relevant times herein served as an elected Commissioner on the BOR.

6.      Defendant, DAN BALANOFF, is an individual that resides in Cook County, Illinois and was at all relevant times herein the First Assistant Commissioner and Chief of Staff for Commissioner Samantha Steele at the BOR.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331 as well as supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. §1367 because those claims are so related to CALABRESE's federal-question claims that they form part of the same case or controversy

8.      Venue is proper under 28 U.S.C. §1391(b) as all the parties reside within the judicial district, and the events from which this claim arise all occurred within the district.

## FACTS

9.      On or about December 19, 2022, Calabrese began working for the BOR as an Assessment Analyst.

10.     As an Assessment Analyst, Calabrese analyzed residential tax appeals in Cook County, to ensure fair and uniform assessments, and communicated decisions to taxpayers. Calabrese's

---

[1] https://www.cookcountyil.gov/agency/board-review

responsibilities included reviewing appraisals, providing customer service, and reviewing evidence submitted by taxpayers.

11.     Calabrese reported directly to BOR District 2 Commissioner Samantha Steele and her First Assistant Commissioner and Chief of Staff Dan Balanoff.

12.     In addition to working as an Assessment Analyst, Calabrese also worked as Steele's Director of Communications.

13.     On January 31, 2024, Steele requested that Calabrese draft a memorandum summarizing the appraisals and briefs for the property tax appeal of the Chicago Bears property in Arlington Heights, Illinois (the "Chicago Bears Memorandum").

14.     After Calabrese wrote the Chicago Bears Memorandum, Steele requested that Calabrese format the memorandum as separate letters to three (3) Cook County Board Commissioners and send her the letters for review.

15.     The next day, Steele and Balanoff asked Calabrese to send the Chicago Bears Memorandum to all the Cook County Board Commissioners and their Chiefs of Staff.

16.     Calabrese had legal and ethical concerns about the request, so on February 2, 2024, Calabrese called the Cook County Board of Review General Counsel and Ethics Officer and asked her for advice.

17.     Calabrese also had concerns that he could be exposing the BOR to litigation, since it would seem as if the BOR was soliciting the Cook County Board of Commissioners for advice on a specific tax appeal that was still pending.

18.     The BOR's General Counsel advised Calabrese that since the BOR is a quasi-judicial body and the tax appeal was pending, Calabrese should not send the Chicago Bears Memorandum to the entire Cook County Board of Commissioners.

19.     The following Monday, on February 6, 2024, at 8:45 AM, Steele inquired if Calabrese sent the Chicago Bears Memorandum to the entire Cook County Board of Commissioners, to which Calabrese responded: "Our general counsel […] advised me against sending out that letter. I will have her send [you] an explanation. She informed me that since we are a quasi-judicial body, we should not make specific commentary about pending matters."

20.     Steele responded by asking: "Did you run Calabrese's request by the [General Counsel]?"

21.     Later that same day, on February 6, 2024, Balanoff called Calabrese at 2:58 PM and told Calabrese not to talk to General Counsel ever again.

22.     Calabrese would be told later numerous times by Steele and Balanoff that Calabrese was never to speak with General Counsel because she was "working against" Steele and her "agenda."

23.     Steele and Balanoff have publicly and privately had a negative relationship with General Counsel.

24.     Steele and Balanoff were also actively involved in political campaigns opposing the two (2) other BOR Commissioners, George A. Cardenas ("Cardenas") and Larry Rogers Jr. ("Rogers"), with the intent of gaining control of the Board of Review.

25.     Steele and Balanoff politically supported the campaigns of Larecia Tucker, who ran against Commissioner Rogers for Board of Review Commissioner, and Theresa Mah, who ran against Commissioner Cardenas for 12th Ward Committeeperson, during the March 2024 primary elections.

26.     During this time, both Steele and Balanoff would pressure Calabrese to engage in political activity opposing Commissioner Rogers and Commissioner Cardenas and Calabrese refused.

27.     Following the Chicago Bears Memorandum incident, on or about February 14, 2024, Balanoff pressured Calabrese to perform work while Calabrese was on vacation out of the country in Colombia by "shop[ping]" to "appropriate media contacts" a second memorandum written by

Balanoff that accused Commissioner Rogers and Commissioner Cardenas of wrongdoing (the "Cardenas/Rogers Memorandum").

28. Steele also emailed the Cardenas/Rogers Memorandum to Commissioners on the Cook County Board of Commissioners.

29. Despite being on vacation, Calabrese told Balanoff that he would review the memorandum when he was able to.

30. In Calabrese's opinion the accusations in the Cardenas/Rogers Memorandum against the two Commissioners were vague, petty, and political. While Calabrese did not believe the memorandum was newsworthy, he did contact the press as he was instructed to do by Balanoff. Calabrese spoke to one journalist, who also believed the memorandum was not newsworthy.

31. On February 14, 2024, Calabrese emailed Balanoff and Steele and told them that their Cardenas/Rogers Memorandum was not newsworthy.

32. When Calabrese returned from vacation on February 21, 2024, Calabrese started experiencing hostility and harassment from Balanoff.

33. Immediately after returning from vacation, Calabrese was demoted by Balanoff, who told Calabrese that he was to only process appeals and do "nothing else." Previously, Calabrese also handled policy and communication matters for Steele, and Calabrese was considered a senior staff member.

34. After pushing back on pushing out the Cardenas/Rogers Memorandum, Calabrese was no longer involved in senior staff meetings.

35. Balanoff also denied Calabrese a paid time off (PTO) request of one day for no reason.

36. On February 21, 2024, the day Calabrese returned from vacation, Steele leaked to the media the BOR's decision regarding the valuation of the Arlington Racetrack property owned by the

Chicago Bears before a final vote had been taken by the BOR and before the Chicago Bears had been notified.

37. That same day, dozens of journalists called Calabrese seeking clarification.

38. That same day, Balanoff accused Calabrese of not processing enough appeals during the day. Calabrese told Balanoff that handling more files was impossible given that Calabrese had been handling extensive media calls that day, and because Calabrese needed time to catch up on his emails after just returning from vacation.

39. Upon information and belief, on or about February 23, 2024, Balanoff attempted to submit at least two (2) false disciplinary complaints against Calabrese.

40. One of the false disciplinary complaints submitted by Balanoff stated that Calabrese took an 'unapproved vacation' in October 2023. However, Balanoff approved Calabrese's PTO request in October 2023.

41. The other false disciplinary complaint submitted by Balanoff stated that Calabrese did not work for approximately one (1) hour on January 5, 2024.

42. However, during the one (1) hour that Calabrese supposedly did not work, Calabrese was able to specifically show that he was updating BOR social media accounts and working on a taxpayer matter.

43. On March 5, 2024, Calabrese learned that a presentation he was scheduled to give at the Illinois Property Assessment Institute (IPAI) on April 7, 2024, titled "Cook Couty Board of Review Appeals Process," which was an overview of Board of Review operations and had previously been approved by Steele and Balanoff in November 2023, had been cancelled.

44. Instead, either Steele or Balanoff contacted the IPAI and changed the presentation to "Charting the Course: A Fireside Chat with Commissioner Samantha Steele on Leadership, Transparency, and Government Efficiency" in which Steele would be presenting instead of Calabrese.

45.     In March 2024, during various dates and time, Calabrese was interviewed by BOR General Counsel and BOR Human Resources about Balanoff's disciplinary complaints.

46.     On March 11, 2024, Calabrese showed Balanoff that Calabrese completed more residential property tax appeals the previous two weeks than any other analyst besides one other analyst, and Balanoff said Calabrese was "killing it."

47.     Later in the day, Tara Orris, Steele's Deputy Chief of Staff, asked Calabrese to provide her Calabrese's media contacts as "a request from [Steele] and [Balanoff]." Calabrese initially refused because Calabrese assumed it would be used to disparage Commissioner Rogers and Commissioner Cardenas.

48.     Balanoff then directly contacted Calabrese and insisted that Calabrese supply him with a media list. In response thereto, Calabrese supplied him with a media list.

49.     Previously, one of Calabrese's responsibilities was to write press releases for Steele. However, as part of Calabrese's demotion, Balanoff took that responsibility away from Calabrese.

50.     In March 2024, Balanoff, using the media list that Calabrese supplied, sent a press release which insulted BOR Secretary Liliana Escarpita and Chief Deputy Commissioner Timnetra Burruss, and explicitly referred to the elections of Commissioners Rogers and Cardenas.

51.     Calabrese felt the press release was political and was an improper use of Cook County funds and time. Balanoff did not supply Calabrese with a copy of the press release before he sent it, and Calabrese learned about it after the Daily Herald requested a response from Liliana Escarpita.

52.     On March 14, 2024, Shauna James, the BOR Human Resources Director, contacted Calabrese on Microsoft Teams in the afternoon. While Shauna James was contacting Calabrese on Teams, Balanoff emailed Calabrese a Microsoft Outlook invite inviting Calabrese to a March 21, 2024, meeting and "performance review."

53.     Calabrese found the "performance review" request odd since he had never had an employee performance review previously, so Calabrese believed he was targeted for retaliation.

54.     Furthermore, March was the busiest tax appeal time of the year for BOR employees, and all analysts had to work overtime; so Calabrese found the timing to be unusual.

55.     Shortly thereafter, Calabrese asked Shauna James if she was aware of any performance reviews. In response, Shauna James requested that Calabrese immediately meet with her and the BOR's General Counsel in person for an interview.

56.     On or about March 14, 2024, During Calabrese's interview with Shauna James and General Counsel, it was disclosed to Calabrese that Balanoff was attempting to file bogus disciplinary reports against Calabrese in his personnel file.

57.     Shauna James and General Counsel were concerned that Balanoff and Steele were trying to fire Calabrese in retaliation for contacting General Counsel in February 2024 for advice on handling the Chicago Bears situation.

58.     Following the interview on March 14, 2024, Calabrese called Jacob Leland, the BOR District 2's Director of Residential Appeals, the same day.  Leland told Calabrese that he was unaware of any performance reviews and that Calabrese's performance as a residential tax appeals analyst was favorable.

59.     That same day on March 14, 2024, Balanoff sent Calabrese an email that referenced the recently sent press release and said that:

> "Commissioner Steele would like some attention brought to the situation outlined in attached press release. I sent it out […] with no action. When it comes to communications with the press, I don't have your talent or relationships. Can you update the release with your contact info and see if you can get a publication to run with it? This is a confidential communication that should not be discussed with any BOR staff outside of District 2."

60. On March 15, 2024, Calabrese sent Balanoff a message on Microsoft Teams in which he expressed concerns about the unusual circumstances of the scheduled "performance review." In response to Calabrese's message, Balanoff called Calabrese on Microsoft Teams.

61. During the Microsoft Teams call, Balanoff told Calabrese that he was disappointed that Calabrese did not create negative press about Commissioner Rogers and Commissioner Cardenas before the election. At the time of the call, the Primary Elections were four (4) days away. In response, Calabrese told Balanoff that his request to create negative news stories of Commissioner Rogers and Commissioner Cardenas before the election was inappropriate.

62. During the Microsoft Teams call, Balanoff also told Calabrese that he did not like Calabrese contacting BOR HR Director Shauna James regarding the performance review. Balanoff told Calabrese that Calabrese should not be contacting Shauna James, Liliana Escarpita, nor General Counsel, because they were "unfair" to him and Steele. Balanoff also said that Steele had been distrustful of Calabrese since Calabrese contacted General Counsel in February 2024.

63. A few hours after the Microsoft Teams call, Calabrese received a cancellation notice from Balanoff of the scheduled "performance review." Calabrese reported the incident to the BOR's General Counsel and Ethics Officer the following Monday, March 18, 2024.

64. On March 27, 2024, Calabrese received an email from the Cook County Office of the Independent Inspector General (OIIG). The OIIG Investigator told Calabrese that Calabrese was not accused of wrongdoing and that they wanted to schedule Calabrese for a "witness interview" for the morning of March 28, 2024.

65. On March 28, 2024, Calabrese had an interview with the OIIG.

66. During Calabrese's 90-minute interview with the OIIG, Calabrese learned that Balanoff was target of an OIIG investigation, and the Investigator invited Calabrese back for another interview as part of separate OIIG investigations also involving Balanoff and Steele.

9

67.     Later in the day, on March 28, 2024, following Calabrese's OIIG interview, Calabrese called Shauna James, the BOR Human Resources Director, on Microsoft Teams and requested to be transferred to a different division within the BOR.

68.     Calabrese told Shauna James that Calabrese was interviewed by the OIIG as part of an investigation into misconduct of Balanoff and was fearful of further retaliation by Balanoff and Steele.

69.     Shauna James responded that since BOR analysts are remote workers, Calabrese's interactions with Balanoff and Steele were limited, and Calabrese did not need to transfer to a different division.

70.     On March 30, 2024, Steele aggressively messaged Calabrese on Microsoft Teams on a Saturday and copied Balanoff.

71.     In this message, Steele was complaining that Calabrese was late completing a presentation that Steele was to give the following Wednesday. In response, Calabrese texted Steele on her personal phone and asked if they could talk, to which Steele responded affirmatively.

72.     Calabrese then called Steele and told her he was late with the presentation because Balanoff had been harassing Calabrese about completing as many appeals as possible and because Calabrese was very stressed due to the unexpected OIIG interview.

73.     Calabrese then proceeded to tell Steele about the OIIG interview. Calabrese also told Steele that he was asked about disciplinary reports that Balanoff attempted to submit against Calabrese that were unusual. Calabrese also told Steele that he believed Balanoff tried to submit false and vindictive discipline reports against him, and that he was very concerned.

74.     In response thereto, Steele told Calabrese that General Counsel told her and Balanoff that they "had to write [Calabrese] up."

75.     During the call, Calabrese also told Steele that he was insulted that Balanoff tried to discipline Calabrese for allegedly not working for an hour during January 2024, when Calabrese was in fact working hard during that period.  Steele agreed that Calabrese did work very hard during the period, particularly for Calabrese staffing all the taxpayer outreach events.

76.     During the call, Calabrese also asked Steele if she was trying to terminate his employment, and Steele responded that she thought Calabrese was a valuable employee and that she was not terminating him.

77.     During the call, Calabrese also told Steele that he was also questioned by General Counsel and BOR Human Resources Director Shuana James about the reports, and that he was so stressed out that it was affecting his work.

78.     The next day, on March 31, 2024, Steele texted Calabrese, "I hope you're feeling better" in response to a happy birthday text Calabrese sent her.

79.     On April 2, 2024, Steele sent Calabrese multiple angry work emails and messages during business hours, calling Calabrese insubordinate because he did not invite her to a zoom presentation Calabrese made to the Illinois REALTORS' Political Action Committee.

80.     However, Calabrese made the Zoom presentation during PTO and in Calabrese's personal capacity as a political commentator who makes GIS maps of election results.  Furthermore, Steele had not been invited to the meeting by the Illinois REALTORS' Political Action Committee.

81.     Steele categorized the incident as Calabrese "disregarding a direct request," even though her request was clearly outside of the workplace environment.  Calabrese responded to Steele that he believed her demands were inappropriate. Calabrese subsequently reported the incident to the OIIG on April 2, 2024.

82.     Calabrese also reported the incident to the BOR General Counsel on the morning of April 4, 2024, during a phone call.

83.    On April 2, 2024, the OIIG interviewed Calabrese for two (2) hours in the afternoon. Calabrese was interviewed by different investigators from the March 28, 2024, interview.

84.    During this interview, it was again revealed that the targets of the OIIG's investigations were Balanoff and Steele. The OIIG were investigating many matters about them, but one focus of Calabrese's interview was Balanoff and Steele's retaliation against Calabrese following Calabrese contacting General Counsel during the Chicago Bears Memorandum incident in February 2024.

85.    Calabrese subsequently became aware that Balanoff and Steele were also interviewed by the OIIG in late April 2024.  Steele shared her Outlook calendar with Calabrese, and Calabrese noticed Steele had an OIIG interview on her calendar for the morning of April 22, 2024.

86.    On April 25, 2024, while at office at the BOR, Calabrese heard Balanoff being interviewed by the OIIG for several hours (Calabrese's office was directly across the hall from Balanoff's office).

87.    On April 25, 2024, while at a political fundraiser outside of work, Steele pointed at Calabrese and told someone sitting next to him "I don't know if I can trust him, he might fuck me [over]," referring to Steele seemingly being leery of Calabrese betraying her in some way.

88.    At this fundraiser, Steele also complained to Calabrese that he did not send the February 2024 press release when requested.

89.    On April 26, 2024, Steele called Calabrese on Microsoft Teams and told him that she had been interviewed earlier in the week by the OIIG for three hours and demanded that Calabrese tell her what he disclosed to the OIIG.

90.    In response thereto, Calabrese told her that he did not want to discuss the OIIG investigations, but that Calabrese was very upset about Balanoff's false HR complaints.

91.    In response, Steele told Calabrese that she and Balanoff had been pressured by BOR Secretary Lilian Escarpita and BOR General Counsel to file false HR complaints against Calabrese.

92.     Calabrese responded that he did not believe that was the case.

93.     In response, Steele told Calabrese that Liliana Escarpita and General Counsel were "lying" to him.

94.     Further, Steele told Calabrese that "as my employee, I do not want you to speak with Liliana [Escarpita] or [General Counsel]."

95.     On April 30, 2024, Calabrese called Nicholas Cummings, BOR Assistant General Counsel, to file an incident report of the April 26, 2024, conversation with Steele.

96.     On May 3, 2024, Calabrese emailed three investigators from the OIIG to report his conversation with Steele.

97.     At some point in May 2024, Balanoff and Steele approved Calabrese to take two property assessment courses during work hours, for a total of 7 business days in June 2024.

98.     On May 3, 2024, Balanoff emailed Calabrese that Calabrese also had the "blessing" of Steele to take an International Association of Assessing Officers (IAAO) course from June 10-14, 2024.

99.     On May 13, 2024, Balanoff emailed Calabrese that he spoke with Steele that there were "no issues" with Calabrese taking an Illinois Property Assessment Institute (IPAI) course that Calabrese had requested permission to take from June 27-28, 2024.

100.     On May 8, 2024, and May 9, 2024, Calabrese accompanied Steele to Springfield, Illinois on a legislative trip, where they met with Illinois legislators.

101.     On May 9, 2024, Steele offered to drive Calabrese in her personal vehicle from Springfield to Chicago, and Calabrese accepted.

102.     On May 15, 2024, Allen Manuel, the Clerk of the BOR, asked Calabrese to supply him with a GIS map of the BOR for use for the Cook County Office of the President, Toni Preckwinkle.

103. Between May 15-16, 2024, Calabrese created a GIS map of the BOR for the Office of the President.

104. Calabrese informed Balanoff and Steele that Calabrese created the map immediately after Calabrese created it on May 15, 2024 and Steele responded, "Looks good."

105. On May 16, 2024, Steele was upset that a staffer from the Office of the President would not permit a "Samantha Steele" logo to be placed on the GIS map that Calabrese created.

106. That same day, Steele sent Calabrese a Microsoft Teams message with photos of business cards she collected of lobbyists she met during their May 8-9, 2024, trip to Springfield and asked Calabrese to send them letters. Calabrese felt that the lobbyists did not work on property tax issues and had nothing to do with Steele's official duties and that the request was outside of his scope of employment. As such, Calabrese refused.

107. In response, Steele became upset that Calabrese was working on a map for the Office of the President and not her letters to the lobbyists.

108. That same day, Steele also demanded the names of all individuals Calabrese spoke to in the Office of the President.

109. Calabrese found Steele's Microsoft Teams messages regarding lobbyists to be unethical and Calabrese reported them to the OIIG as well as the BOR's General Counsel and Ethics Officer.

110. Other Cook County employees also inquired about Calabrese creating a GIS map of parcels with certificates of errors that the BOR must process.

111. Calabrese informed Steele of these outside requests and Calabrese did not create any additional GIS maps based on these requests.

112. On May 17, 2024, Balanoff contacted Calabrese asking for all communications that Calabrese had with any BOR employees outside of District 2, which Calabrese supplied to Balanoff.

113.    That same day, Balanoff later called Calabrese and said that Steele wanted to terminate Calabrese's employment because Calabrese was in contact with BOR employees outside of District 2.

114.    Calabrese told Balanoff that Calabrese fully disclosed his communications and that he had no other tasks since appeals were closed. During that same phone call, Balanoff told Calabrese that he wanted to keep Calabrese hired, so Calabrese would be given "one last chance," but that if he contacted employees outside of District 2 again, he "would be fired."

115.    Calabrese immediately told Balanoff in a Microsoft Teams message that he felt that his call was harassing and abusive and that Calabrese's coworkers should be able to contact him.

116.    On May 17, 2024, Calabrese informed Balanoff that he would be filing a complaint with the OIIG against him that day.

117.    That same day, Calabrese called the OIIG to report Balanoff's threat of termination.

118.    That same day, Calabrese called the BOR's General Counsel to report the incident.

119.    That same day, Steele wrote Tom Lynch, the Cook County Chief Information Officer: "I am writing to request that my employee, Frank Calabrese, have his accounts immediately suspended. He will be terminated at the end of the day today. Please don't hesitate to reach out to me or my First Assistant, Dan Balanoff, if you have any questions."

120.    After Tom Lynch replied that he would proceed with disabling the accounts, Steele replied "Thank you for your assistance with this unfortunate situation."

121.    That same day, Steele wrote Liliana Escarpita, the BOR Secretary:

"Unfortunately, it has become necessary to terminate Frank Calabrese as an employee of the Board of Review. He has repeatedly been disrespectful to me, insubordinate, and yesterday he lied to me about his work. I have lost all faith in his integrity and judgment. I will need you to process his termination paperwork as neither I [n]or my senior staff feel comfortable doing so. It is my understanding that he is in the office today."

122. That same day, Calabrese filled out a complaint and walked it over from the BOR office located at 118 N Clark St #601, Chicago, IL 60602 to the Secretary's Office at the George W. Dunne Cook County Administration Building, 69 W. Washington St., Chicago, IL 60602.

123. In the Secretary's Office, Calabrese also had to be manually clocked out of work that day since he did not have access to Cook County Time, an online dashboard that assists Cook County employees with clocking in and out of work.

124. On May 19, 2024, Calabrese emailed a complaint against Balanoff to the OIIG.

125. On May 20, 2024, Calabrese received an email from Steele stating that Calabrese's employment with the BOR had been terminated for "insubordination," without further explanation.

126. Calabrese was terminated without a pre- or post-termination hearing.

127. The BOR's Personnel Rules include policies and procedures on progressive discipline, including verbal warnings, written warnings, suspensions, demotions, before final termination; however, these policies were not followed by Steele. Likewise, Steele did not adhere to Cook County's Personnel Rules and Policies regarding the termination, as well.

128. While employed with BOR, Calabrese was a dedicated employee that enjoyed the work he did, and he planned to stay with BOR for the remainder of his career.

129. Calabrese has worked hard to earn and maintain a good personal and professional reputation as a public servant, and as a result enjoys a good personal and professional reputation as a public servant in the community.

130. As a result of the termination at the hands of Defendants, Calabrese has suffered humiliation, shock, and grief, as well as emotional, reputational, and economic harm.

<u>COUNT I</u>
**FIRST AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983**
**FREEDOM OF SPEECH**
**AGAINST ALL DEFENDANTS**

NOW COMES the Plaintiff, Frank Calabrese, by and through his attorneys, for his Complaint against the Defendants, Cook County Board of Review; and Samantha Steele, in her individual and official capacity, and Dan Balanoff, in his individual and official capacity, for a violation of 42 U.S.C. § 1983 ("§1983"), a violation of Calabrese's First Amendment (as incorporated through the Fourteenth Amendment) Rights of Free Speech, and in support thereof states and alleges as follows:

1-130.   Calabrese restates and realleges paragraphs 1-130 as though fully set forth herein.

131.   Defendants violated Calabrese's free speech rights because they terminated his employment in retaliation for refusing orders that he felt were unlawful and unethical and for speaking with the OIIG. The termination of Calabrese's employment amounts to a constitutional deprivation.

132.   Calabrese's express pushback and refusal to follow orders he perceived to be unlawful and unethical; along with his refusal to campaign against Commissioners Rogers and Cardenas; as well as participating in an OIIG investigation, is akin to speech; and Defendants discharged Calabrese for reasons that infringed upon his constitutionally protected interest in freedom of speech.

133.   The speech Calabrese engaged in was constitutionally protected and the Defendants retaliated against him because of that speech. As such, Calabrese can establish that his alleged constitutional deprivations were motivated by his free speech.

134.   While Calabrese was a public employee, his speech is constitutionally protected and his interest in expressing himself and commenting on the matters referenced *supra* was as a <u>private citizen</u> on a matter of public concern outweighs any injury the speech could cause to the BOR'S interest in promoting effective and efficient public service.

135.     Calabrese's refusal to follow orders he perceived to be unlawful and unethical, as well as his participation in an OIIG investigation, were nondisruptive exercises of his First Amendment right to express himself on matters of public concern.

136.     Calabrese's speech was "at least a motivating factor" or a "sufficient condition" of Defendants' decision to terminate him; and in fact, it was the stated reason for his termination when he was accused of being "insubordinate" to Steele.

137.     As such, the protected activity and the adverse action are not wholly unrelated.

138.     The temporal proximity of Calabrese's speech and his termination cannot be denied. Calabrese was terminated only a few weeks after speaking with the OIIG and only a few days after filing a complaint against Balanoff with the OIIG.

139.     Defendants cannot provide a non-retaliatory reason for the adverse action and the Defendants' proffered reasons are a mere pretext for retaliation.

140.     Defendants had no real reason to terminate Calabrese's employment. Calabrese worked for BOR for over one (1) year and was meeting all his employer's reasonable expectations. To be terminated after refusing to follow orders he perceived to be unlawful and unethical, as well as participating in an OIIG investigation, shows there was animosity towards Calabrese.

WHEREFORE, the Plaintiff, FRANK CALABRESE, requests that judgment be entered against Defendants, COOK COUNTY BOARD OF REVIEW; and SAMANTHA STEELE, in her individual and official capacity, and DAN BALANOFF, in his individual and official capacity, and that this Court award him the following relief:

A.     Reinstatement to his previous position, or an equivalent position, with the same seniority status he would have had but for Defendants' actions;
B.     An injunction and order restraining BOR from filling Calabrese's position while this case is pending.
C.     Back pay in an amount to be determined at trial;
D.     In the event reinstatement is not granted, front pay;
E.     Compensatory and consequential damages, including for emotional distress;

18

F.     Punitive damages;

G.    Pre-judgment and post-judgment interest at the highest lawful rate;

H.    Attorneys' fees and costs of this action;

I.     An injunction and order permanently restraining BOR and its officers, agents, successors, employees, and/or representatives (including Samantha Steele and Dan Balanoff) from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein;

J.     Any such further relief as this Honorable Court finds reasonable.

## COUNT II
## FOURTEENTH AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983
## DENIAL OF PROCEDURAL DUE PROCESS
## AGAINST ALL DEFENDANTS

NOW COMES the Plaintiff, Frank Calabrese, by and through his attorneys, for his Complaint against the Defendants, Cook County Board of Review; and Samantha Steele, in her individual and official capacity, and Dan Balanoff, in his individual and official capacity, for a violation of 42 U.S.C. § 1983 ("§ 1983"), a violation of CALABRESE's Fourteenth Amendment Due Process Rights, and in support thereof states and alleges as follows:

1-140.  Calabrese restates and realleges paragraphs 1-140 as though fully set forth herein.

141.    As a public employee, Calabrese was entitled to both a pre-termination hearing prior to his termination, as well as a post-termination hearing after his termination. This pre-termination hearing is an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

142.    A public entity prior to the termination must provide oral or written notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity for the employee to present his or her side of the story.

143.    Calabrese was denied a pre-termination and post-termination hearing and was not given an opportunity to present his side of the story.

144. Calabrese's constitutional injury (his termination) was caused by two (2) persons with final decision-making authority—Steele as Commissioner of the BOR, and Balanoff as First Assistant Commissioner and Chief of Staff for Commissioner Samantha Steele at the BOR.

WHEREFORE, the Plaintiff, FRANK CALABRESE, requests that judgment be entered against Defendants, COOK COUNTY BOARD OF REVIEW; and SAMANTHA STEELE, in her individual and official capacity, and DAN BALANOFF, in his individual and official capacity, and that this Court award him the following relief:

A. Reinstatement to his previous position, or an equivalent position, with the same seniority status he would have had but for Defendants' actions;

B. An injunction and order restraining BOR from filling Calabrese's position while this case is pending.

C. Back pay in an amount to be determined at trial;

D. In the event reinstatement is not granted, front pay;

E. Compensatory and consequential damages, including for emotional distress;

F. Punitive damages;

G. Pre-judgment and post-judgment interest at the highest lawful rate;

H. Attorneys' fees and costs of this action;

I. An injunction and order permanently restraining BOR and its officers, agents, successors, employees, and/or representatives (including Samantha Steele and Dan Balanoff) from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein;

J. Any such further relief as this Honorable Court finds reasonable.

## COUNT III
## VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT
## AGAINST ALL DEFENDANTS

NOW COMES the Plaintiff, Frank Calabrese, by and through his attorneys, for his Complaint against the Defendants, Cook County Board of Review; and Samantha Steele, in her individual and official capacity, and Dan Balanoff, in his individual and official capacity, for a violation of the Illinois Whistleblower Act ("Act"), 740 ILCS 174, *et seq.*, and in support thereof states and alleges as follows:

1-144. Calabrese restates and realleges paragraphs 1-144 as though fully set forth herein.

145. Calabrese is individual who was always employed on a full-time basis by Defendants relevant hereto; thus is an "employee" under the Whistleblower Act. *See* 740 ILCS 174/5.

146. BOR is an "employer" as defined by the Whistleblower Act. *See* 740 ILCS 174/5.

147. Steele was acting within the scope of her express or implied authority on behalf of BOR when committing the acts described herein and is therefore an "employer" as defined by the Whistleblower Act. *See* 740 ILCS 174/5.

148. Balanoff was acting within the scope of his express or implied authority on behalf of BOR when committing the acts described herein and is therefore an "employer" as defined by the Whistleblower Act. *See* 740 ILCS 174/5.

149. An employer may not retaliate against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation. *See* 740 ILCS 174/15.

150. "Any other act or omission not otherwise specifically set forth in this Act, whether within or without the workplace, also constitutes retaliation by an employer under this Act if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing." *See* 740 ILCS 174/20.1.

151. On March 28, 2024 and April 2, 2024, Calabrese spoke with the OIIG regarding their investigations of Steele and Balanoff.

152. Defendants violated the Whistleblower Act by retaliating against Calabrese in numerous ways, including terminating his employment, after he cooperated with the OIIG's investigations.

153. Calabrese has suffered emotional distress, loss of pay, loss of reputation, and other damages as a result of the Defendants' acts.

WHEREFORE, the Plaintiff, FRANK CALABRESE, requests that judgment be entered against Defendants, COOK COUNTY BOARD OF REVIEW; and SAMANTHA STEELE, in her individual and official capacity, and DAN BALANOFF, in his individual and official capacity, and that this Court award him the following relief:

A. Reinstatement to his previous position, or an equivalent position, with the same seniority status he would have had but for Defendants' actions;

B. Back pay, with pre-judgment and post-judgment interest at the highest lawful rate;

C. Compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees.

D. Any such further relief as this Honorable Court finds reasonable.

<u>COUNT IV</u>
**COMMON LAW RETALIATORY DISCHARGE**
**AGAINST ALL DEFENDANTS**

NOW COMES the Plaintiff, Frank Calabrese, by and through his attorneys, for his Complaint against the Defendants, Cook County Board of Review; and Samantha Steele, in her individual and official capacity, and Dan Balanoff, in his individual and official capacity, for Retaliatory Discharge, and in support thereof states and alleges as follows:

1-153. Calabrese restates and realleges paragraphs 1-153 as though fully set forth herein.

154. The United States has a clearly mandated public policy in favor of protesting the illegitimate policies and practices of a government agency, as well as public policy in favor of protecting citizen's First Amendment Rights to Freedom of Speech.

155. Illinois has a clearly mandated public policy in favor of protecting whistleblowers.

156. Defendants discharged Calabrese on May 20, 2024, in retaliation for activities in support of the public policies in favor of protesting the illegitimate policies and practices of a government agency, as well as public policy in favor of protecting citizen's First Amendment Rights to Freedom of Speech.

157.     Defendants wrongfully terminated Calabrese's employment in retaliation for, *inter alia*: (1) contacting the BOR General Counsel regarding the Chicago Bears Memorandum in February 2024, (2) refusing to aid Steele and Balanoff's political campaign against Commissioners Rogers and Cardenas, (3) cooperating with OIIG investigations, and (4) filing a complaint against Balanoff on May 17, 2024.

158.     Defendants' act of discharging Calabrese in retaliation for Calabrese's actions *supra* violates clearly mandated public policies of the United States and State of Illinois.

159.     Calabrese has suffered a loss of income and significant emotional distress because of Defendants' retaliatory acts.

WHEREFORE, the Plaintiff, FRANK CALABRESE, requests that judgment be entered against Defendants, COOK COUNTY BOARD OF REVIEW; and SAMANTHA STEELE, in her individual and official capacity, and DAN BALANOFF, in his individual and official capacity, and that this Court award him the following relief:

A.     Reinstatement to his previous position, or an equivalent position, with the same seniority status he would have had but for Defendants' actions;

B.     An injunction and order restraining BOR from filling Calabrese's position while this case is pending.

C.     Back pay in an amount to be determined at trial;

D.     In the event reinstatement is not granted, front pay;

E.     Compensatory and consequential damages, including for emotional distress;

F.     Punitive damages;

G.     Pre-judgment and post-judgment interest at the highest lawful rate;

H.     Attorneys' fees and costs of this action;

I.     An injunction and order permanently restraining BOR and its officers, agents, successors, employees, and/or representatives (including Samantha Steele and Dan Balanoff) from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein;

J.     Any such further relief as this Honorable Court finds reasonable.

**COUNT V**
**CONSPIRACY UNDER 42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

NOW COMES the Plaintiff, Frank Calabrese, by and through his attorneys, for his Complaint against the Defendants, Cook County Board of Review; and Samantha Steele, in her individual and official capacity, and Dan Balanoff, in his individual and official capacity, for Civil Conspiracy under 42 U.S.C. § 1983, and in support thereof states and alleges as follows:

1-159.  Calabrese restates and realleges paragraphs 1-159 as though fully set forth herein.

160.  Calabrese was deprived of his constitutional rights when his employment was terminated in violation of his First Amendment Rights to Freedom of Speech, and in retaliation for cooperating with OIIG investigations.

161.  Defendants made an agreement to deprive Calabrese of his constitutional rights.

162.  There was an actual deprivation of Calabrese's rights arising from overt acts in furtherance of the agreement.

163.  The BOR, through Steele and/or Balanoff, has a well-settled and widespread policy of retaliating against employees for their speech and taking adverse employment action against employees if they posed any kind of perceived political risk to Steele, or if they were "disloyal" to or refused any orders by Steele and/or Balanoff.

164.  For instance, during the December 4, 2023 regular meeting of the BOR, while voting to reappoint BOR Secretary Liliana Escarpita for another term, Steele voted against reappointing Escarpita due to Escarpita allegedly not "drafting a new work chart and job descriptions," stating: "I sent [Escarpita] an email in May [2023] and [it] was not addressed."

WHEREFORE, the Plaintiff, FRANK CALABRESE, requests that judgment be entered against Defendants, COOK COUNTY BOARD OF REVIEW; and SAMANTHA STEELE, in her

individual and official capacity, and DAN BALANOFF, in his individual and official capacity, and that this Court award him the following relief:

A.    Reinstatement to his previous position, or an equivalent position, with the same seniority status he would have had but for Defendants' actions;

B.    An injunction and order restraining BOR from filling Calabrese's position while this case is pending.

C.    Back pay in an amount to be determined at trial;

D.    In the event reinstatement is not granted, front pay;

E.    Compensatory and consequential damages, including for emotional distress;

F.    Punitive damages;

G.    Pre-judgment and post-judgment interest at the highest lawful rate;

H.    Attorneys' fees and costs of this action;

I.    An injunction and order permanently restraining BOR and its officers, agents, successors, employees, and/or representatives (including Samantha Steele and Dan Balanoff) from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein;

J.    Any such further relief as this Honorable Court finds reasonable.

## COUNT VI
## COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

NOW COMES the Plaintiff, Frank Calabrese, by and through his attorneys, for his Complaint against the Defendants, Cook County Board of Review; and Samantha Steele, in her individual and official capacity, and Dan Balanoff, in his individual and official capacity, for intentional infliction of emotion distress, and in support thereof states and alleges as follows:

1-164.    Calabrese restates and realleges paragraphs 1-164 as though fully set forth herein.

165.    Defendants' conduct described *supra*—terminating Calabrese's employment for Calabrese *inter alia*: (1) contacting the BOR General Counsel regarding the Chicago Bears memorandum in February 2024, (2) refusing to aid Steele and Balanoff's political campaign against Commissioners Rogers and Cardenas, (3) cooperating with OIIG investigations, and (4) filing a complaint against Balanoff on May 17, 2024—was truly extreme and outrageous and goes beyond all possible bounds of decency.

166.     Additionally, Defendants committed these acts while acting in a position of authority to Calabrese, which makes the acts *de facto* extreme and outrageous. *See McGrath v. Fahey*, 126 Ill. 2d 78, 127 Ill. Dec. 724, 533 N.E.2d 806 (1988).

167.     Defendants either intended that their conduct would inflict severe emotional distress or knew that there was at least a high probability that their conduct would cause severe emotional distress when they retaliated against Calabrese.

168.     A defendant in a tort case "must take his plaintiff as he finds him, even if he is more susceptible to injury than the average person." *Zurba v. United States*, 247 F. Supp. 2d 951, 962 (N.D. Ill. 2001); *Reed v. Union Pacific Railroad Co.*, 185 F.3d 712, 717 (7th Cir. 1999); *Colonial Inn Motor Lodge, Inc. v. Gay,* 288 Ill. App. 3d 32, 45, 680 N.E.2d 407, 416 (1997).

WHEREFORE, the Plaintiff, FRANK CALABRESE, requests that judgment be entered against Defendants, COOK COUNTY BOARD OF REVIEW; and SAMANTHA STEELE, in her individual and official capacity, and DAN BALANOFF, in his individual and official capacity, and that this Court award him the following relief:

A.     Reinstatement to his previous position, or an equivalent position, with the same seniority status he would have had but for Defendants' actions;

B.     An injunction and order restraining BOR from filling Calabrese's position while this case is pending.

C.     Back pay in an amount to be determined at trial;

D.     In the event reinstatement is not granted, front pay;

E.     Compensatory and consequential damages, including for emotional distress;

F.     Punitive damages;

G.     Pre-judgment and post-judgment interest at the highest lawful rate;

H.     Attorneys' fees and costs of this action;

I.     An injunction and order permanently restraining BOR and its officers, agents, successors, employees, and/or representatives (including Samantha Steele and Dan Balanoff) from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein;

J.     Any such further relief as this Honorable Court finds reasonable.

## COUNT VII
## VIOLATION OF THE ILLINOIS PERSONNEL RECORD REVIEW ACT
## AGAINST ALL DEFENDANTS

NOW COMES the Plaintiff, Frank Calabrese, by and through his attorneys, for his Complaint against the Defendants, Cook County Board of Review; and Samantha Steele, in her individual and official capacity, and Dan Balanoff, in his individual and official capacity, for a violation of the Illinois Personnel Record Review Act (820 ILCS 40/6), and in support thereof states and alleges as follows:

1-168.   Calabrese restates and realleges paragraphs 1-168 as though fully set forth herein.

169.     Upon information and belief, in February 2024 and March 2024, Balanoff and Steele placed false writeups in Calabrese's personnel file.

170.     Pursuant to the Illinois Personnel Record Review Act, "[i]f either the employer or the employee knowingly places in the personnel record information which is false, the employer or employee, whichever is appropriate, shall have remedy through legal action to have that information expunged." *See* 820 ILCS 40/6.

171.     The BOR must expunge any false write ups authored by Steele and/or Balanoff that were placed in Calabrese's personnel file.

WHEREFORE, the Plaintiff, FRANK CALABRESE, requests that judgment be entered against Defendants, COOK COUNTY BOARD OF REVIEW; and SAMANTHA STEELE, in her individual and official capacity, and DAN BALANOFF, in his individual and official capacity, and that this Court award him the following relief:

A.     An Order requiring the Cook County Board of Review expunge any and all false disciplinary reports from Calabrese's personnel file;
B.     All statutory damages under the Illinois Personnel Record Review Act (including $200 plus costs, reasonable attorney's fees, and actual damages);
C.     Compensatory damages, including for emotional distress;
D.     Pre-judgment and post-judgment interest at the highest lawful rate;
E.     Any such further relief as this Honorable Court finds reasonable.

## **JURY DEMAND**

Plaintiff hereby requests a jury trial.

Respectfully submitted,
FRANK CALABRESE

By:    /s/ Matthew R. Custardo
One of his Attorneys

Matthew R. Custardo (ARDC #: 06329579)
CUSTARDO LAW, LLC
650 Warrenville Road, Suite 100
Lisle, IL 60532
Tel: 630-557-1451
matthew@custardolaw.com

## **VERIFICATION**

I, FRANK CALABRESE, am the Plaintiff in this action. Calabrese have read the foregoing Verified Complaint and am familiar with its contents. Calabrese declare under penalty of perjury under the laws of the United States that all the factual statements contained in the foregoing are true and accurate to the best of Calabrese's belief and is based upon personal knowledge, except where expressly indicated otherwise.

*Frank Calabrese*

_____

FRANK CALABRESE

Matthew R. Custardo (ARDC #: 06329579)
CUSTARDO LAW, LLC
650 Warrenville Road, Suite 100
Lisle, IL 60532
Tel: 630-557-1451
matthew@custardolaw.com